UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM J. STEVENS,

    Plaintiff,

v.

RICHARD SHARIF,

    Defendant.

No. 15 C 1405

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

William Stevens, an attorney, alleges that his former client, Richard Sharif, failed to pay him for legal services. R. 1. Sharif has filed a counterclaim for malpractice against Stevens. R. 51. Sharif's sister, Haifa Sharifeh,[1] has filed a motion to intervene in Sharif's malpractice claim on behalf of the Estate of Sharif's mother (the "Estate"). R. 88. Stevens has objected to intervention, and made arguments that the Estate has failed to state a claim. R. 94. For the following reasons, the Court grants the Estate's motion to intervene, but dismisses its claim.

**Background**

Stevens agreed to represent Sharif in bankruptcy proceedings and subsequent appeals. R. 1 ¶ 7. Although neither party addresses the details of the bankruptcy proceedings in this case, the Supreme Court reviewed the facts in *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015). According to the

---

[1] Haifa is also known as "Haifa Kaj," which is her married name. *See Sharif v. Fox*, 2016 WL 5373199, at *1 n.1 (N.D. Ill. Sept. 26, 2016).

Supreme Court, Sharif entered into a business contract with Wellness International Network but later sued the company in a federal court in Texas. *Id.* "Sharif repeatedly ignored Wellness' discovery requests and other litigation obligations, resulting in an entry of default judgment [and an award of attorney's fees] for Wellness." *Id.*

In part as a result of the debt he incurred in the *Wellness* case, Sharif filed for Chapter 7 bankruptcy in the Northern District of Illinois in 2009. *Id.* Sharif was unable to discharge his debts, in part, because Wellness discovered a loan application document in which Sharif purported to own over $5 million in assets in a trust established in the name of Sharif's mother (the "Trust"). *Id.* On July 6, 2010, the bankruptcy court found that the Trust's assets were property of Sharif's bankruptcy estate and subject to Sharif's creditors. *See* R. 94-1 at 238-55; *see also Wellness Int'l*, 135 S. Ct. 1932 at 1941. Haifa was listed as one of Sharif's creditors in the bankruptcy proceedings. *See* R. 94-1 at 319.

Sharif alleges Stevens committed malpractice when he failed to present evidence that Sharif did not own the Trust. R. 51 ¶ 3. Haifa and the Estate seek to intervene in this claim on the basis that the evidence Stevens allegedly failed to present to the bankruptcy court were documents that Sharif's mother provided to Stevens. *See* R. 88-1 ¶ 6. Sharif, Haifa and the Estate contend that these documents would have demonstrated that Sharif was not the alter ego of the Trust such that it was not a part of Sharif's bankruptcy estate.

Sharif, Haifa and the Estate also allege that Stevens committed malpractice when he failed to raise an objection to the bankruptcy court's jurisdiction on appeal based on the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 463 (2011). R. 51 ¶ 4. Stevens failed to cite *Stern* in the initial brief he filed on Sharif's behalf in the district court on August 9, 2011. *See Sharif v. Wellness Int'l Network, Ltd.*, 10 C 5303, R. 17 (N.D. Ill. Aug. 9, 2011). Stevens also failed to cite *Stern* in the reply brief he filed on September 21, 2011. *See* 10 C 5303, R. 24. Stevens did, however, move to file a supplemental brief addressing *Stern* on January 12, 2012, after the Seventh Circuit issued its decision in *In re Ortiz*, 665 F.3d 906 (7th Cir. 2011), which explained *Stern's* impact. *See* 10 C 5303, R. 28. The district court denied this motion and affirmed the bankruptcy court's decision. *See Sharifeh v. Fox*, 2012 WL 469980 (N.D. Ill. Feb. 10, 2012).

Haifa's sister Ragda, purportedly acting on behalf of the Trust, joined Sharif's district court appeal, represented by attorney Garett Reidy. Ragda, through Reidy, filed a motion in the district court to withdraw the reference to the bankruptcy court, which was denied. *See* 10 C 5303, R. 30. Reidy also represented Haifa and Ragda in a state court action attempting to protect the Trust's assets from the bankruptcy court's order, which was filed on July 30, 2010. *See* R. 94-1 at 258-66.

Sharif, again represented by Stevens, appealed the district court's decision. *See* R. 68-1. In his opening brief filed in the Seventh Circuit on April 10, 2012, Stevens again failed to make an argument based on *Stern*. *See Sharif v. Wellness Int'l Network*, 12-1349, R. 13 (7th Cir. Apr. 10, 2012). He did, however, include this

3

argument in his reply brief filed on May 30, 2012. *See* 12-1349, R. 29. Despite Steven's failure to raise a *Stern* objection in his opening brief, the Seventh Circuit held on August 21, 2013 that a *Stern* objection could not be waived, and reversed the district court, holding "the bankruptcy court lacked constitutional authority to enter final judgment." *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 775-76 (7th Cir. 2013).

Ragda, again purportedly on behalf of the Trust, also participated in the proceedings in the Seventh Circuit, again represented by Reidy. Ragda argued that she should be a party to the appeal on behalf of the Trust, because the Trust was a party to the bankruptcy court proceedings through Sharif as trustee, and Sharif had resigned his position as trustee. *See* 12-1349, R. 8-1 (April 9, 2012). The Seventh Circuit denied Ragda's motion to substitute herself as a party on behalf of the Trust in the appeal, *see* 12-1349, R. 15 (April 23, 2012), and denied Ragda's subsequent motion for reconsideration holding that the "failure to identify a party as an appellant in the notice of appeal is a jurisdictional bar to hearing that party's appeal." *See* 12-1349, R. 30 (June 25, 2012).

In 2015, the Supreme Court reversed the Seventh Circuit's reversal of the bankruptcy court's order, holding that adjudication by an Article III judicial body was a personal right and could be waived by a litigant, as opposed to a constitutional right that cannot be waived. *Wellness Int'l*, 135 S. Ct. at 1942-47. It remanded the case to the Seventh Circuit, with instructions to decide whether Sharif waived this jurisdictional right by failing to raise a *Stern* objection until his

4

reply brief. *Id*. at 1949. On remand, the Seventh Circuit held on August 4, 2015 that Sharif "waited too long to raise his *Stern* objection because he did not mention the issue until his reply brief," and on that basis, the court affirmed the district court's decision against Sharif. *Wellness Int'l Network, Ltd. v. Sharif*, 617 Fed. App'x 589, 590-91 (7th Cir. 2015).

On September 16, 2015, Haifa, represented by Maurice Salem (who also represents Sharif and Haifa in this case), brought a motion in the bankruptcy court seeking to vacate the bankruptcy court's order for turnover of the trust's assets to Sharif's creditors. See R. 94-1 at 1. The bankruptcy court denied that motion, stating that it was "not convinced based on the scant record herein that the movant is a party entitled to notice of the motion on which the [turnover] order was based." *Id*. at 5. The bankruptcy court continued, "[t]here isn't even a suggestion of evidence or information that the property of the bankruptcy estate dealt with in the [turnover] order belonged to a person or entity not then before the court." *Id*. The bankruptcy court noted further that if Haifa disagreed with the turnover order, she should have opposed it at the time, since she was listed as one of Sharif's creditors, and as such would have received notice of the order. *Id*. The bankruptcy court held that Haifa had failed to "show that she has standing to seek anything from the bankruptcy estate and has not explained what property the trustee holds that rightfully belongs to an entity she represents." R. 94-1 at 23.

On November 30, 2015, Haifa, again represented by Mr. Salem, filed an appeal in the district court of the bankruptcy court's order denying the motion to

5

vacate. *See Sharifeh v. Sharif*, 15 C 10694, R. 1 (N.D. Ill. Nov. 30, 2015). Judge Dow recently denied that appeal on September 26, 2016. *See Sharif*, 2016 WL 5373199. Haifa has filed a motion to reconsider that is pending as of the date of this opinion.

Not to be deterred, on February 25, 2016, Haifa, again represented by Mr. Salem, brought another motion in the bankruptcy court challenging the July 6, 2010 ruling. *See* R. 94-1 at 25-105. The motion was based in part on a purported will by Sharif's mother naming Haifa as executrix. This will contradicted the will produced during the bankruptcy proceedings in 2010, and the bankruptcy court found it "highly suspect" and disregarded it. R. 94-1 at 81. The bankruptcy court's order also described other suspicious activity by Haifa, Ragda, and Mr. Salem in connection with their efforts to reclaim the Trust's assets. The bankruptcy court found that Haifa, Ragda, and Mr. Salem had "shown a complete disregard for the judicial system and blatant attempts at circumventing it," by inappropriately repeatedly challenging the "settled" finding that Sharif was the owner of the Trust assets, such that they were properly subject to his creditors. R. 94-1 at 103. On this basis, the bankruptcy court entered an order to show cause why Haifa, Ragda, and Mr. Salem should not be sanctioned.

**Analysis**

**I. Intervention**

Haifa seeks to intervene as a plaintiff in Sharif's malpractice claim on behalf of the Estate, alleging that the Estate was also injured when the Trust funds were used to satisfy Sharif's creditors. Intervention is governed by Federal Rule of Civil

6

Procedure 24(a)(2), which provides "the court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." (emphasis added). Further, Rule 24(b)(1)(B) also provides that "the court *may* permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." (emphasis added).

Stevens's arguments do not address the elements of Rule 24. But clearly, the Estate's claim shares a "common question of law *and* fact" with Sharif's claim, as both claims point to Stevens's failure to present certain documents to the bankruptcy court as an act of malpractice. Thus, intervention is appropriate here.

## II. Failure to State a Claim

### A. Attorney-Client Relationship

Rather than addressing intervention and the elements of Rule 24, Stevens argues that Haifa and/or the Estate lack standing or have failed to state a claim. Stevens first argues that the Estate does not have "standing" because "Stevens never represented the Estate in any capacity, and thus, he never owed any duty to the Estate." R. 94 at 6. This of course is not actually an argument about constitutional standing, but is an argument that the Estate has failed to state a claim for legal malpractice because Stevens never had an attorney-client relationship with Haifa or the Estate. Stevens contends that that the Estate "has

7

not produced any evidence, nor does any evidence exist, demonstrating Stevens's intent to represent the Estate or take any action benefiting the Estate." R. 94 at 7. In support of its claim, the Estate alleges that it formed an attorney-client relationship with Stevens when he "took on the responsibility and duty to show that the trust was not an alter ego of Sharif on behalf of both [Sharif] and his mother," when he accepted documents from Sharif's mother and promised to submit them to the bankruptcy court. *See* R. 88-1 ¶ 6.

"An attorney-client relationship arises only when both the attorney and the client consent to its formation." *Kensingtons Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 909 N.E.2d 848, 860 (Ill. App. Ct. 1st Dist. 2009). Consent "may be express or implied." *Zych v. Jones*, 406 N.E.2d 70, 74 (Ill. App. Ct. 1st Dist. 1980). A client cannot unilaterally create the relationship, and the putative client's belief that the attorney is representing her is only one consideration. *See Rosenbaum v. White*, 692 F.3d 593, 601 (7th Cir. 2012); *see also Goldfarb Corp. v. Much, Shelist, Freed, Denenberg Ament & Rubenstein, P.C.*, 2016 WL 3019426, at *10 (Ill. App. Ct. 1st Dist. May 25, 2016) ("The relationship cannot be created by either party alone."). "However, if an attorney knows that a person is relying on his performance of services and he performs for that person's benefit without limitation, an attorney-client relationship can be found." *Meriturn Partners, LLC v. Banner & Witcoff, Ltd.*, 31 N.E.3d 451, 456 (Ill. App. Ct. 1st Dist. 2015) (citing Restatement (Third) of the Law Governing Lawyers § 14 (2000)); *see also Sailsbery v. Village of Sauk Village*, 2016 WL 1402291, at *4 (N.D. Ill. Apr. 11, 2016) ("An attorney-client

8

relationship exists when the lay party submits confidential information to the law party with reasonable belief that the latter is acting as the former's attorney."). Whether an attorney-client relationship exists, and thus whether the attorney owes a duty to a particular person, is a question of law. *See Blue Water Partners, Inc. v. Mason*, 975 N.E.2d 284, 295 (Ill. App. Ct. 1st Dist. 2012). "However, findings of fact often must be made concerning the formation of the attorney-client relationship to, for example, resolve disputes concerning communications, acts undertaken, or the parties' respective understandings." *Meriturn*, 31 N.E.3d at 456. "[A]t least in the absence of any relatively clear indication by the potential client to the attorney that he believed he was being . . . represented, we think no . . . attorney-client relationship can be inferred without some finding that the potential client's subjective belief is minimally reasonable." *United States v. Evans*, 113 F.3d 1457, 1465 (7th Cir. 1997).

Here, the Estate alleges that Sharif's mother gave documents to Stevens with the expectation that he would use those documents in a legal proceeding to prove that a trust she owned was not a part of Sharif's bankruptcy estate. This allegation is sufficient to plausibly demonstrate that Sharif's mother "reasonably believed" that Stevens was representing her because Stevens knew that Sharif's mother was "relying on the performance of his services." Depending on the actual content of the communications between Stevens and Sharif's mother, and the nature of the documents, the Estate's allegation could be a sufficient basis to imply an attorney-client relationship for the limited purpose of presenting the documents in question

9

to the bankruptcy court. Therefore, Stevens's arguments concerning the lack of an attorney-client relationship during the time period leading up to the bankruptcy court's order are not a basis to dismiss the Estate's claim at the pleading stage.

However, the Estate has failed to sufficiently allege that it had an attorney-client relationship with Stevens during the appeal. The Estate alleges that it suffered "injury . . . from Stevens'[s] *two* negligent acts." R. 88-1 ¶ 9 (emphasis added). But the Estate fails to make any *factual* allegations demonstrating that it had an attorney-client relationship with Stevens during the appeal process. Furthermore, Haifa and Ragda, purportedly as representatives of the Trust, were working with an attorney other than Stevens in attempts to defeat the bankruptcy court's order. Garett Reidy filed an action in state court on their behalf on July 30, 2010. Mr. Reidy also filed motions on behalf of Ragda and the Trust in Sharif's appeals in the district court and the Seventh Circuit. (These were the proceedings during which Stevens allegedly negligently failed to challenge the bankruptcy court's jurisdiction.) Of course, Haifa and the Estate were not expressly parties to those motions. But the combination of the fact that Mr. Reidy represented Haifa in state court, and that Mr. Reidy also participated in the appeal proceedings that underlie the malpractice claims at issue here, makes it highly implausible that Stevens was representing Haifa and/or the Estate during those proceedings. Absent a plausible allegation of an attorney-client relationship, Haifa and the Estate cannot maintain a malpractice action against Stevens based on his conduct during the appeal proceedings.

B.  **Standing to Represent the Estate**

Stevens also argues that Haifa "is not the executrix of the Estate," and so she does not have standing to intervene. Stevens argues that the bankruptcy court "has already determined that [Haifa] does not have standing to assert claims to the Trust property because she is not the Executrix of the Estate." R. 94 at 9. But the bankruptcy court did not make a definitive holding about Haifa's status with regard to the Estate. Rather, the bankruptcy court held that "it is *unclear* who has standing to pursue claims on behalf of [the Estate]." R. 94-1 at 87 (emphasis added). Thus, the bankruptcy court's order does not appear to be a basis to preclude Haifa from arguing that she is the executrix of the Estate in this Court.

C.  **Statute of Limitations**

Lastly, Stevens argues that the Estate's motion to intervene is untimely with respect to the statute of limitations for a claim of legal malpractice.[2] In Illinois the statute of limitations for a legal malpractice claim is two years. 735 ILCS 5/13-214.3(b). "Under Illinois law, a cause of action for legal malpractice accrues when the client discovers, or should have discovered, the facts establishing the elements of his cause of action." *Woidtke v. St. Clair County*, 335 F.3d 558, 562 (7th Cir. 2003)

---

[2] This argument regarding the statute of limitations is not an argument that the motion is untimely under Rule 24, which is not an issue here. *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797-98 (7th Cir. 2013) ("The timeliness requirement [of Rule 24] forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute. We look to four factors to determine whether a motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances.").

11

(citing *Profit Mgmt. Dev. Group v. Jacobson, Brandvik & Anderson, Ltd.*, 721 N.E.2d 826, 841 (Ill. App. Ct. 2d Dist. 1999)). "Although the time at which a malpractice plaintiff knew or should have known that he has been injured and that his injury was wrongfully caused is normally a question of fact, a court may decide the issue as a matter of law where the facts are undisputed and only one conclusion may be drawn from them." *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 703 N.E.2d 473, 481 (Ill. App. Ct. 1st Dist. 1998). A plaintiff is injured for purposes of legal malpractice, and the statute of limitations period begins to run, when a plaintiff "has suffered a loss for which it may seek damages." *Woidtke*, 335 F.3d at 564.

Here, the bankruptcy court entered judgment against Sharif on July 6, 2010. That order also held that the Trust assets were the property of Sharif's bankruptcy estate. "Illinois courts have held that the statute of limitations in legal malpractice claims will generally run from the date the adverse order or judgment was entered." *Canfield v. Badesch*, 2013 WL 4716364, at *4 (Ill. App. Ct. 1st Dist. Aug. 30, 2013) (citing cases). The Estate does not argue that it was unaware of the force of Stevens's actions on that date. And the Court does not see a basis to draw such an inference since Haifa was named as a creditor in Sharif's bankruptcy petition, *see* R. 94-1 at 319, and Haifa filed a state court action attempting to protect the trust's assets 24 days later on July 30, 2010, demonstrating that she was aware of the force of the bankruptcy court's order. *See* R. 94-1 at 258-66. Accordingly, the statute of limitations on any malpractice claim against Stevens expired on July 30, 2012, well

12

before Haifa and the Estate filed this motion to intervene in Sharif's malpractice claim against Stevens on December 12, 2016.

The Estate argues that its malpractice action did not accrue until Sharif exhausted his appeal of the bankruptcy court's order, and the Seventh Circuit entered its order affirming the bankruptcy court's order on August 4, 2015. *See* R. 95 at 4. According to the Estate, this is because prior to the Seventh Circuit's August 4 order "the damage element of negligence [had] not accrue[d]." R. 95 at 4. The Estate, however, cites no authority to justify its contention that an appeal to which it was not a party could function to toll the statute of limitations. Furthermore, even if the Estate somehow had a legal interest in the appeal, the pendency of an appeal of a judgment that would establish damages in a legal malpractice claim does not toll the statute of limitations for such a claim. *See Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 536 F.2d 730, 734 (7th Cir. 1976) ("Because [the plaintiff's] claim has accrued . . . an action upon it may be maintained even though all the damages are not yet ascertainable [pending appeal]."); *see also Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132. 1139 (Ill. 1995) ("Although the circuit court could have reconsidered its decision in 1989, plaintiffs were on notice by this time that they had a problem with the mechanics lien. Otherwise, the statute of limitations could be postponed indefinitely until all avenues of appeal in the earlier suit were exhausted.") (internal citations omitted); *Godbold v. Karlin & Fleisher, LLC*, 2014 WL 3417355, at *6 (Ill. App. Ct. 1st Dist. July 11, 2014) ("Plaintiff chose not to file her complaint until June 25,

2012, more than two years after the adverse judgment was entered. Based on our established case law, the filing of a subsequent appeal in the underlying medical negligence action did not toll the statute of limitations for the legal malpractice action."); *Thomas v. Utreras*, 2011 WL 10088195, at *4 (Ill. App. Ct. 1st Dist. Aug. 30, 2011) ("Here, even though Thomas subsequently filed an appeal with the Seventh Circuit, the district court's March 3, 2008, dismissal of Thomas' discrimination claim was the first adverse ruling against him. Therefore, the statute of limitations period began to run on March 3, 2008."); *Grater, Inc. v. Katten Muchin Rosenman, L.L.P.*, 2011 WL 10069476, at *10 (Ill. App. Ct. 1st Dist. Mar. 31, 2011) ("[I]n the present case, the statute of limitations for legal malpractice began to run on July 13, 2007, the date upon which the trial court entered what appeared upon the four corners of its face to be an unqualified money judgment against Grater and in favor of CVS, notwithstanding any possibility of later modification of that order by the circuit court or any possibility that it might be erroneous and reversed on appeal."); *Hinkle v. Ross*, 1995 WL 723783, at *5 (N.D. Ill. Dec. 4, 1995) ("[T]he Court holds that the pending appeal of the action which is the subject of the legal malpractice action does not render the claim premature."). The Estate might argue that once the Seventh Circuit overturned the bankruptcy court's order a legal malpractice claim against Stevens no longer existed since it was the bankruptcy court's order that formed the basis for the injury underlying the malpractice claim. But that would not change the fact that the actions Stevens took which are alleged to be negligent had in fact happened, and the date of the

judgment that was entered as a result of Stevens's actions is the trigger for the statute of limitations to run. The fact that the extent or existence of damages is unsettled does not change that fact. In any event, damages still existed in the form of the fees and costs necessary to overturn the bankruptcy court order.

More important, even if appeal proceedings that will ascertain the extent of damages could serve to toll a statute of limitations, that would not save the Estate here. The Estate knew the extent of its damages—i.e., the loss of the Trust's assets—upon the entry of the bankruptcy court's order. The Seventh Circuit's order reversing the bankruptcy court actually destroyed that element of the Estate's malpractice claim. But this did not happen until August 21, 2013, which is more than two years after the malpractice claim accrued on July 30, 2010. Thus, any potential tolling effect of the Seventh Circuit's decision is irrelevant here.

Although not expressly argued, it may also be that the Estate sees the date of the Seventh Circuit's affirmance of the bankruptcy court as the correct accrual date because it believes that the two malpractice actions Sharif has alleged against Stevens—(1) the failure to present documents to the bankruptcy court, and (2) the failure to raise a *Stern* argument on appeal—are all of one piece. But as discussed, the Estate has not sufficiently alleged an attorney-client relationship with Stevens during the appeal process. The only plausible attorney-client relationship between Stevens and the Estate was during the bankruptcy proceedings when Sharif's mother allegedly gave Stevens certain documents to provide to the bankruptcy court. Since the Estate has not plausibly alleged an attorney-client relationship

15

with Stevens during the appeal process, the time period of the appeal process is irrelevant to whether the Estate's claim is timely. Therefore, the Estate's malpractice claim is dismissed.

## Conclusion

For the foregoing reasons, Haifa's motion to intervene, R. 88, is granted, but the Estate's claim is dismissed without prejudice. In light of the Court's decision granting the motion to intervene, and Stevens's response to that motion, the Court deems Stevens to have been served with process regarding the Estate's claim.

If the Estate can make factual allegations demonstrating that it had an attorney-client relationship with Stevens for the appeal proceedings consistent with the requirements of Rule 11, the Estate may file a motion for leave to file an amended complaint by February 13, 2017. Such a motion is limited to five pages and must attach the proposed amended complaint. Stevens should not respond to any such motion unless the Court so orders. If the Estate fails to file such a motion by February 13, its dismissal will be with prejudice.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: February 2, 2017